**IN THE COURT OF APPEALS OF IOWA**
No. 24-0440
Filed October 29, 2025

**IN RE THE MARRIAGE OF VENKATA SUBBARAO YARLAGADDA
AND KIRANMAI VSN YARLAGADDA**

**Upon the Petition of
VENKATA SUBBARAO YARLAGADDA,**
        Petitioner-Appellee,

**And Concerning
KIRANMAI VSN YARLAGADDA, n/k/a KIRANMAI VSN TALASILA,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


        A respondent appeals the property-division and spousal-support provisions

of the decree dissolving the parties' marriage.  **AFFIRMED AS MODIFIED.**


        Robb D. Goedicke of Neighborhood Law Group of Iowa, West Des Moines,

for appellant.

        David E. Brick and Allison M. Steuterman of Brick Gentry, P.C., West Des

Moines, for appellee.


        Considered without oral argument by Greer, P.J., and Buller and

Langholz, JJ.

**LANGHOLZ, Judge.**

Venkata and Kiranmai Yarlagadda married in 2001. But by 2022, they no longer lived together. Kiranmai lived in Johnston with their daughter, and Venkata had moved to Texas for work and was staying with his brother. Once Kiranmai made it clear that she did not intend to move to Texas to be with Venkata, he petitioned to dissolve their marriage. They agreed to issues relating to physical care and legal custody of their daughter, but they disagreed over how to divide their assets and debts and whether Venkata should pay spousal support.

When dividing their property following trial, the district court found it equitable to award Kiranmai both the investments she made and the debt she acquired to make those investments. It declined to award Kiranmai traditional spousal support even though she had limited work experience outside the home because she had recently started a career selling insurance. It limited the support award to rehabilitative support lasting five years.

Kiranmai appeals, challenging the division of property and the duration of the spousal support award. Because the property division is within the equitable range, we do not disturb it. But we conclude that an award of traditional support—rather than only five years of rehabilitative support—is needed to do equity under these circumstances. We thus modify the spousal-support award to continue until either parties' death or Kiranmai's remarriage and affirm the decree as modified.

I. **Facts and Proceedings**

Venkata and Kiranmai's marriage was arranged by their parents. At the time, Venkata lived and worked in the United States, and Kiranmai had completed her medical education in India to work as a physician there. They married in India

in 2001, and then Kiranmai joined Venkata in the United States.  But she could not work as a physician in the United States until she obtained the Educational Commission for Foreign Medical Graduates certification.  While Kiranmai obtained her certification in 2008 and tried to secure a spot in a residency program, she was ultimately unsuccessful.

Kiranmai mostly managed the home, though she did work some jobs during the marriage.  For example, she worked part-time as a mental-health instructor for two years making $13.25 an hour.  She assisted a psychiatrist at the University of Iowa for two months and made $28.00 per hour during that project.  And she worked as a clinical assistant in Cedar Rapids for six months.  Kiranmai also began day trading and investing in initial public offerings in 2020 using credit cards and a home equity line of credit for funding.

Venkata worked as a software engineer for John Deere before taking a software engineering job with the city of Des Moines in 2007.  In March 2022, Venkata left his job with the city, moved to Texas, and began working for the Texas state government.

Venkata and Kiranmai agreed that Kiranmai and their child would join Venkata in Texas after their child finished the school year.  But that move never happened.  The family reunited in July 2022 at Kiranmai's extended family reunion. While together, they argued.  After Venkata returned to Texas, Kiranmai sought a protective order under Iowa Code chapter 236 (2022) to which Venkata consented.

In December, Venkata petitioned to dissolve their marriage.  In his requested relief, Venkata asked that assets and liabilities be divided equitably and that neither spouse should pay the other spousal support.  In her requested relief,

Kiranmai detailed her proposed distribution of assets and liabilities and requested $1750 in monthly spousal support for the remainder of her life. They agreed to joint legal custody of their child, placing the child in Kiranmai's physical care, and a visitation schedule for Venkata. So the disputed issues at trial were limited to the division of property and spousal support.

At trial, Kiranmai testified that it is unlikely that she would ever be able to work as a physician in the United States. She explained that she has started to learn the insurance business and is pursuing a career in that field instead. As of trial, she had made $2500 from that insurance work. Venkata testified that he intended to continue to work for the Texas state government. Both gave unclear testimony about who started and ran a business called Mangosteen Technologies and what type of work that company did.

In the dissolution decree, the district court awarded Kiranmai spousal support in the amount of $1750 per month for a period of five years.[1] The court reasoned that she could be capable of self-support after five years given her education, new venture into insurance sales, and financial support from her parents. As to the property division, it awarded her the IPO stock investments, the investments accounts, debt associated with the stock purchases, Mangosteen Technologies, the marital home, a portion of one of Venkata's retirement accounts, and some property in India. The court also required Venkata to pay Kiranmai a property-equalization payment. Kiranmai now appeals.

---

[1] The court limited the spousal support award to $450 per month while Venkata was also paying child support. But given the age of the parties' child, he was only required to pay child support for three months.

## II. Property Division

Kiranmai first challenges the division of the marital assets and debts, arguing that the division was inequitable and that Venkata's property-equalization payment to her should have been increased by $60,000 to $300,000. We review the district court's division of property de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). When dissolving a marriage, courts "shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5). We will only disturb a property division when it fails to do equity, and what is equitable "depends upon the circumstances of each case," as guided by the factors in Iowa Code section 598.21(5). *Hansen*, 733 N.W.2d at 702. And "[a]n equitable division is not necessarily an equal division." *Id.*

To support her claim for a $60,000 increase in the equalization payment, Kiranmai first complains that the district court allocated all of the marital debt to her. But she offered to take on the debt because she wanted the benefit of all of the investments made with that debt. That compromise was equitable. She also complains about being awarded Mangosteen Technologies because its value could not be determined but had associated debts. The company's value could not be determined given the limited information presented by the parties about it. But Kiranmai admitted that "proceeds of the Mangosteen went into the Webull account"; and she was awarded that account in the division of assets. She also explained that she used funds from the company in her day trading. So we find no inequity with the district court awarding Mangosteen Technologies to Kiranmai.

She also complains that gifts from her parents were not properly considered. She claims her parents provided the couple with $30,000 that should be credited to her and increase the property-equalization award. From the record, we discern that she is referring to money she testified her parents gave to Venkata to pay off some of his debts in India so that he could afford to purchase a home in Iowa. During his testimony, Venkata denied receiving any such financial support from Kiranmai's parents. But even if Kiranmai's parents did make such a gift, the money would have gone to the payment of other debts—not the family home. And it would have actually been a gift to Venkata—not Kiranmai.

Kiranmai also argues the district court should have found that three properties in India were gifts to her from her parents rather than just two. She provides no support for her assertion. But Venkata submitted an exhibit showing that he transferred money to Kiranmai's father, which he claimed was used to purchase the property during the marriage. Because Kiranmai cannot provide any support for her claim that the third property was gifted to her by her parents, we do not disturb the district court finding that the property was marital property.

Finally, Kiranmai argues that the district court should not have discredited an appraisal of another property that she submitted just because it was not dated. But Venkata also submitted a competing appraisal that was dated. Tasked with deciding which appraisal to credit, the court relied on the dated appraisal. We take no issue with that decision.

None of Kiranmai's arguments persuade us that the district court's property division failed to do equity. And so, we do not disturb it.

### III.    Spousal Support

Kiranmai also challenges the duration of the spousal support award.  As with the property division, we review a spousal-support award de novo.  *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023).  But we defer to the district court's "important, but often conjectural, judgment calls" and must not engage in "undue tinkering" with the award on appeal.  *Id.* at 182–83 (cleaned up).  And so, we will "disturb the district court's determination of spousal support only when there has been a failure to do equity."  *Id.* at 182 (cleaned up).

"Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case."  *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022).  We consider many factors when assessing spousal support, including the marriage's length, the health and age of the parties, and their respective earning capacities.  *See* Iowa Code § 598.21A(1)(a)–(j). "While the length of the marriage is an important consideration in awarding traditional support, it is not the only consideration under our statutory framework." *Mills*, 983 N.W.2d at 70.  At bottom, the goal of spousal support "is to do equity." *Id.* at 71 (cleaned up).

Iowa courts recognize four types of spousal support: traditional, reimbursement, rehabilitative, and transitional.  *Sokol*, 985 N.W.2d at 185.  Here, the district court awarded Kiranmai rehabilitative spousal support.  This type of support "is a way of supporting an economically dependent spouse through a limited period of re-education or training following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting."  *Id.* (cleaned up).  Kiranmai contends that the court should have awarded traditional spousal

support. "Traditional spousal support is equitable in marriages of long duration to allow the recipient spouse to maintain the lifestyle to which he or she became accustomed. Generally, only marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* (cleaned up). When deciding whether traditional spousal support is equitable, we give particular attention to the earning capacity of each spouse, their current standards of living, and the spouse's ability to pay weighed against the relative needs of the other spouse. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 436–37 (Iowa 1981).

Reviewing the relevant facts here, we agree with Kiranmai that equity requires she be awarded traditional spousal support rather than rehabilitative support. She and Venkata were married for twenty-two years, meeting the commonly accepted durational threshold. *See Sokol*, 985 N.W.2d at 185.

And we recognize that Kiranmai sacrificed her ability to practice medicine in India when she relocated to the United States to be with Venkata. Her efforts to complete a residency program so that she could practice medicine in the United States were hampered at least in part by Venkata's limitations on how much time she could devote to securing a residency position. As a result, Kiranmai's medical career never got off the ground, and she was financially dependent on Venkata for their entire marriage. She is attempting to start a career in insurance sales. But her income as of trial—$2500 in total over the course of several months—does not suggest that she will earn significant income from it. And it is not clear whether Mangosteen Technologies will continue to produce any sort of revenue for her. On

the other hand, Venkata makes $131,000 per year plus retirement benefits from his employment—with every indication that he would be able to continue to work.[2]

Given the length of the marriage, disparity in the parties' incomes, Kiranmai's limited earning capacity and long-standing financial dependence on Venkata, and Kiranmai's sacrifice of her medical career to be with Venkata, an award of traditional spousal support—rather than rehabilitative—is equitable. While the monthly amount of the court's award—$1750—is appropriate, its five-year duration fails to do equity. We thus modify the $1750 per month award of spousal support to continue until either parties' death or Kiranmai's remarriage.

**AFFIRMED AS MODIFIED.**

---

[2] Unlike the district court—and contrary to Venkata's urging on appeal—we give no consideration to any possibility that Kiranmai's parents could provide her future financial support. *See In re Marriage of Mills*, 983 N.W.2d 61, 66, 71–73 (Iowa 2022) (similarly considering the equities and deciding to award spousal-support without any mention of opposing party's argument that his spouse's "family would never let her want for anything and have always supported her financially"). Venkata has offered no contrary authority supporting his position.